1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

6  ASHLEE BRUM, et al.,                      CASE NO. 1:12-cv-01636-AWI-KSO

7                                            **ORDER DENYING DEFENDANTS'**
                    Plaintiffs,              **MOTION FOR JOINDER**
8
9        v.                                  (Docket No. 25)

10  COUNTY OF MERCED, et al.,

11
                    Defendants.
12
   _____/
13

14              **I.    INTRODUCTION**

15          On February 20, 2013, Defendants County of Merced ("County") and Mark Pazin ("Pazin"

16  or collectively "Defendants") filed a Motion for Joinder seeking to join the Merced County Sheriffs

17  Employees Association ("MCSEA") as a defendant in this action.  (Doc. 24.)  Plaintiffs Ashlee

18  Brum, et al. ("Plaintiffs") filed an opposition on March 13, 2013, and Defendants filed a reply on

19  March 20, 2013.  (Docs. 31, 32.)

20          The Court reviewed the parties' briefs and supporting documents and determined that this

21  matter is suitable for decision without oral argument pursuant to the Local Rules of the United States

22  District Court, Eastern District of California, Rule 230(g).  For the reasons set forth below,

23  Defendants' Motion for Joinder is DENIED.

24          **II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

25          On October 3, 2012, Plaintiffs, who are past and/or current employees of the Merced County

26  Sheriff's Department, filed a complaint against Defendants, alleging claims for gender discrimination

27  and harassment in violation of Title VII of the Civil Rights Act of 1964, violation of Plaintiffs' civil

28  rights pursuant to 42 U.S.C. § 1983, gender discrimination and harassment in violation of the

California Fair Employment and Housing Act ("FEHA"), failure to prevent discrimination and harassment in violation of the California FEHA, and a request for a temporary restraining order and for preliminary and permanent injunctions. (Doc. 1.) Plaintiffs allege that Defendants have engaged in a longstanding pattern and practice of discriminating against Plaintiffs and other female correctional officers because of their gender, and have denied Plaintiffs the following: the benefit of their seniority, equal shift preferences, available wage premiums, work-site location changes, supervisory positions, training, speciality and preferential assignments, and opportunities for advancment and promotion when compared to similarly situated male employees. (Doc. 1, ¶ 10a.) Plaintiffs further allege that, because they are female, they are repeatedly held over beyond their scheduled shifts; forced to work significant overtime; given additional and unfavorable work assignments; denied the ability to take lunches, breaks, vacations, holidays, and time-off; and that shift-bidding, time-off, overtime, pay preferences, and other tangible employment benefits are being distributed by Defendants in an unequal manner that strongly favors male and penalizes female correctional officers. (Doc. 1, ¶ 10b-d.) Plaintiffs' complaint includes Right to Sue Notices issued by the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1, Exh. A.)

On November 15, 2012, Defendants filed their answer. (Doc. 13.) On February 1, 2013, the Court issued a scheduling order. (Doc. 19.) On February 7, 2013, pursuant to the agreement of the parties, Plaintiffs filed a first amended complaint ("FAC") adding an additional plaintiff but making no other changes. (Docs. 20-22.) On February 20, 2013, Defendants filed the instant Motion for Joinder, contending that MCSEA is an indispensable or necessary party who should be joined in this action. (Doc. 24.) On March 13, 2013, Plaintiffs filed an opposition, and Defendants filed a reply on March 20, 2013. (Docs. 31, 32.)

### III.   DISCUSSION

Defendants' motion asserts that Plaintiffs' union, MCSEA, is an indispensable and necessary party whose joinder is required because Plaintiffs claims are "inextricably intertwined" with County's agreements with MCSEA. Defendants assert that, without MCSEA as a party, this action could significantly impact Defendants' collective bargaining agreement with MCSEA, subjecting Defendant County to inconsistent obligations. (Doc. 24, 1:26-2:2.) Plaintiffs, however, contend that

Defendants' motion is "nothing more than an effort to interject unrelated issues into this lawsuit." (Doc. 31, 2:3-5.)  Plaintiffs assert that the complaint does not allege that MCSEA bears any responsibility for Defendants' discrimination, the alleged discrimination does not arise out of the collective bargaining agreement, and Plaintiffs' allegations of discrimination focus solely on Defendants' conduct as employers.  (Doc. 31, 2:1-9.)

## A.     Legal Standard

Rule 19 of the Federal Rules of Civil Procedure governs the circumstances in which a nonparty must be joined as a party to an action and states in pertinent part:

> **(a) Persons Required to Be Joined if Feasible.**
>
> **(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> **(2) Joinder by Court Order.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
>
> . . .

Fed. R. Civ. P. 19(a).

A Rule 19 "[c]ompulsory joinder is the exception to the otherwise general policy of allowing the plaintiff to decide who shall be parties to the lawsuit." *Lopez v. Martin Luther King, Jr. Hosp.*, 97 F.R.D. 24, 28 (C.D. Cal. 1983).  A motion seeking joinder under Rule 19 requires three successive inquiries.  *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody II*").  "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.* (citation and quotation marks omitted).  A nonparty who satisfies Rule 19(a) is deemed "necessary," in the sense that such person's joinder is "desirable in the interests of just adjudication."

1     *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("*Peabody I*") (citation omitted).

2     If the court finds that a nonparty should be joined, then "the second stage is for the court to determine

3     whether it is feasible to order that the absentee be joined." *Peabody II*, 610 F. 3d at 1078 (citation

4     and quotation marks omitted).  Lastly, if joinder is not possible, "the court must determine at the

5     third stage whether the case can proceed without the absentee or whether the action must be

6     dismissed." *Id.* (citation and quotation marks omitted).[1]

7           In determining whether a nonparty is necessary to the action, there is "no precise formula for

8     determining whether a particular nonparty should be joined under Rule 19(a) . . . . The determination

9     is heavily influenced by the facts and circumstances of each case." *Id*. at 1081 (citation omitted).  If

10    the nonparty meets the requirements of Rule 19(a), then the court determines whether it is feasible

11    to order that the absentee be joined.  *Id*. at 1078.  Examples of when joinder is not feasible include

12    when venue is improper, when the absentee is not subject to personal jurisdiction, or when joinder

13    would destroy subject matter jurisdiction. *Peabody I*, 400 F.3d at 779.  Finally, if joinder is not

14    feasible, the court determines under Rule 19(b) "whether, in equity and good conscience, the action

15    should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see also*

16    *Shropshire v. Canning*, No. 10-CV-01941-LHK, 2012 WL 13658, at *3 (N.D. Cal. Jan. 4, 2012).

17 **B.**    **Defendants, as the Moving Party, Bear the Burden of Persuasion**

18           Defendants rely on the Fifth Circuit case, *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309

19    (5th Cir. 1986), for the contention that "when an initial appraisal of the facts indicates that a possibly

20    necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes

21    joinder." *Id*. (*see also* Doc. 24, 4:24-26; Doc. 32, 10:16-18.)  Defendants assert that they have

22    shown that MCSEA is a possible necessary party to this action, and that Plaintiffs failed to meet their

23    burden to show the contrary. (Doc. 32, 10:16.)  However, while the Fifth Circuit may have clearly

24

25

---

26         [1] "As of December 1, 2007, Rule 19 no longer refers to 'necessary' or 'indispensable' parties.  Instead, it
refers to 'persons required to be joined if feasible' and persons in whose absence, if they cannot be joined, the action

27 should not proceed.  The advisory committee notes indicate that the 2007 amendments to the civil rules were merely
stylistic.  With respect to Rule 19, they state: 'The language of Rule 19 has been amended as part of the general
restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent

28 throughout the rules. These changes are intended to be stylistic only.'" *Peabody II*, 610 F. 3d at 1078, n. 1.

stated that the burden of proof rests with the party opposing joinder, who bears the burden in the Ninth Circuit is not as clearly established.

In *Sierra Club v. Watt*, 608 F. Supp. 305, 319-21 (E.D. Cal. 1985), the district court considered the Rule 19 burden of persuasion in the Ninth Circuit, noting that "[t]he question appears to be unaddressed." *Id*. at 320.   While the court found "the problem troubling and not easily resolved," it ultimately determined that "that the burden should rest upon the party asserting the necessity of joining absent parties." *Id*.   The court noted that "such an allocation is consistent with the conventional allocation of the burden in most cases" that the moving party bears the burden of persuasion. *Id*.   The district court also determined that "the Supreme Court, by implication, has suggested at least, that such an allocation is appropriate." *Id*. (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-10 (1968) for the inference that "when a party in a lawsuit has raised the issue, that party has the burden of persuading the court that joinder is necessary," and the suggestion that "if a party fails to raise issues of nonjoinder in the trial court," the issue should be considered "foreclosed" and "[s]uch waiver would ordinarily only make sense if the moving party bore the burden of production and thus as a conventional matter the burden of persuasion").

While the Ninth Circuit has not explicitly analyzed the issue of which party bears the burden of persuasion for a Rule 19 motion, it appears to have adopted the standard set forth in *Watt*.  *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citing *Watt* for the assertion that "[t]he moving party has the burden of persuasion in arguing for dismissal" in a Rule 19 motion); *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (citing *Makah Indian Tribe* for the same standard).   Further, other district courts in the Ninth Circuit have likewise adopted the standard for the burden of persuasion established in *Watt*.  *See Nevada Eighty-Eight, Inc. v. Title Ins. Co. of Minnesota*, 753 F. Supp. 1516, 1522 (D. Nev. 1990) ("the burden of proving that joinder is necessary rests with the party asserting it"); *Supergard Canada, Ltd. v. Toughguard, Inc.*, No. CIV. 00-1677-AS, 2001 WL 34047034, at *1 (D. Or. July 19, 2001) (report and recommendation adopted sub nom. *Superguard Canada, Ltd. v. Toughguard, Inc.*, No. CIV. CV00-1677-AS, 2001 WL

1   34042633 (D. Or. Aug. 21, 2001) ("[t]he party raising the defense [of a Rule 19 motion] has the
2   burden of showing that the absent party is needed for a just adjudication")).

3        Accordingly, based on the authority in the Ninth Circuit that has analyzed the standard of
4   persuasion for a Rule 19 motion, it is Defendants' burden of persuasion, as the moving parties, to
5   establish that it is necessary to join MCSEA pursuant to Rule 19, and not Plaintiffs' burden to show
6   that MCSEA should not be joined.

7   **C.    MCSEA is Not a Necessary Party Under Rule 19(a)**

8        The Court must first determine whether MCSEA is a necessary party to this action.  Only if
9   MCSEA is a necessary party to the litigation would the Court need to determine whether joinder is
10  feasible.  *See Peabody II*, 610 F.3d at 1078.

11       Defendants contend that joinder of MCSEA is necessary because Plaintiffs' claims are
12  "inextricably intertwined" with County's collective bargaining agreement with MCSEA and with
13  MCSEA's conduct. (Doc. 24, 1:26-28.) Defendants assert that, without MCSEA named as a party
14  to this action, the collective bargaining agreement would be "significantly impaired" and Defendant
15  County would be subject to inconsistent obligations. (Doc. 24, 1:28-2:2.)  Further, Defendants
16  contend that unless MCSEA is joined, the Court could directly affect the rights of other members
17  of the union who are not parties to this action. (Doc. 24, 2:2-4.) The union members "assignments,
18  overtime, pay and other matters will be directly affected since this court could potentially change the
19  union agreements.  If the union is not a party, no one will present its positions and its members may
20  be adversely affected." (Doc. 24, 10:4-6.)

21       Plaintiffs contend that Defendants' motion is an attempt to "interject unrelated issues" into
22  this case, and assert that their complaint does not allege that MCSEA bears any responsibility for
23  Defendants' discrimination or that the terms of the collective bargaining agreement negotiated with
24  MCSEA discriminate against Plaintiffs. (Doc. 31, 2:2-7.)  Instead, the complaint "focus[es] solely
25  on [D]efendants' conduct as [Plaintiffs'] employers."  (Doc. 31, 2:8-9.)  Plaintiffs assert that
26  "Defendants have failed to demonstrate that complete relief cannot be afforded in this matter without
27  joining MCSEA as a party," and thus the motion must be denied. (Doc. 31, 2:9-11.)

28

As noted above, Rule 19(a)(1)(A) requires that a person be joined if feasible if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).  Under Rule 19(a)(1)(A), the court must determine whether the absence of a party "would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (citation omitted).  This determination contemplates "consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Id.*; *see also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1042-46 (9th Cir.1983); *Fanning v. Grp. Health Co-op.*, No. C-07-1716MJP, 2008 WL 2148753, at *2 (W.D. Wash. May 21, 2008).

The "complete relief" portion of Rule 19(a)(1)(A) is "concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (citation and quotation marks omitted); *see also Fanning*, 2008 WL 2148753, at *2.  In other words, as succinctly summarized by the Third Circuit applying the same standard, the district court limits its analysis to whether it "can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007) (citation omitted). Accordingly, under Rule 19(a)(1)(A), the Court must consider whether complete relief can be accorded between Plaintiffs and Defendants without consideration of the impact on MCSEA.

Rule 19(a)(1)(B), on the other hand, requires that a person be joined if feasible if "*that person claims an interest* relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added).  "Rule 19(a)(1)(B) allows a forced joinder of an outside party only upon the impetus of that outside party." *Fanning*, 2008 WL 2148753, at *2 (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir.1999) ("Joinder [under sub-parts (i) and (ii) ] is contingent upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.")

(internal citation marks omitted)); *see also Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1015 (9th Cir. 2002) (finding that this portion of Rule 19 was "wholly inapplicable because [the absent party] does not claim an interest that will be impaired"); *In re Cnty. of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001) (finding that the defendant "cannot claim that the [absent nonparties] have a legally protected interest in the action unless the [absent parties] themselves claim that they have such an interest" and that they had "been silent"); *Northrop Corp.*, 705 F.2d at 1043-44 (noting that the nonparty in question "never asserted a formal interest in either the subject matter of this action or the action itself.")

### 1. Cases Determining Whether a Union is a Necessary Party

In determining whether a union is a necessary party that should be joined in a labor context, "a court should focus particularly on, first, whether disposition of the case may necessitate altering negotiated terms of a collective bargaining agreement and, second, whether the plaintiff has in fact alleged discriminatory conduct by the union in furthering, perpetuating or countenancing the employer's alleged discriminatory conduct." *Lewis v. B.P. Oil, Inc.*, No. CIV. A. 88-5561, 1990 WL 6116, at *2 (E.D. Pa. Jan. 26, 1990) (citing *Ostapowicz v. Johnson Bronze Co.*, 369 F. Supp. 522, 531 (W.D. Pa. 1973), *aff'd in part and vacated in part*, 541 F.2d 394 (3d Cir.1976); *U.S. v. Commercial Lovelace Motor Freight*, 31 F.R.P. 499, 501 (S.D. Ohio 1983)). "In the case of the joinder of a union in an employment discrimination case, the Court is primarily looking for evidence that its judgment will adversely affect the rights of the union." *Lane v. J.H. Haynes Elec. Co., Inc.*, No. 1:12CV381-LG-JMR, 2013 WL 1310676, at *1 (S.D. Miss. Mar. 28, 2013) (citing *U.S. v. City of Miami, Fl.*, 664 F.2d 435, 462 (5th Cir.1981)).

### a. Union Joinder is Required When the Union's Conduct is at Issue or When the Collective Bargaining Agreement Requires Alteration

To decide whether MCSEA's joinder is necessary, it is helpful to analyze other cases that determined when a union's joinder was or was not required. Defendants cite to *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 179 (D.C. Cir. 1974), where plaintiff, a banquet waitress, initially brought suit pursuant to the equal opportunities provision of the Civil Rights Act against her employer, the joint executive board, and the Waitresses Local 507 union, seeking injunctive relief against

8

maintenance of sexually segregated unions. *Id*. at 179-80.  Her employer filed a motion to dismiss for failure to join indispensable parties, specifically the International union and Waiters Local 781 union. *Id*. at 180.  The district court granted the motion and permitted the plaintiff to file an amended complaint naming the International and Waiters unions.  International sought summary judgment, which was denied, and the district court ultimately ruled that the maintenance of two sex-segregated Local unions by the International union was a per se violation of the Civil Rights Act. *Id*. at 179.  International appealed, arguing, in part, that it should not have been joined because it had not been named in the plaintiff's charge filed with the EEOC.  *Id*. at 180.

The District of Columbia Circuit affirmed the district court's ruling, finding that because the plaintiff's complaint "sought general injunctive relief against sex discrimination in her employment opportunities and specific relief against maintenance of sexually segregated locals," it became "readily apparent that specific injunctive relief against maintenance of sexually segregated locals necessitated International's presence." *Id*. at 181.  Additionally, the court found that "any general injunctive relief granted to plaintiff against the Sheraton Hotel and Waitresses Local 507 only for the purpose of eliminating sex discrimination in her employment opportunities would be akin to rather ineffective symptomatic relief, leaving the root (sexually segregated locals) to continue." *Id.* The court concluded that, although money damages were available as a remedy, "without International complete relief could not be accorded . . . by way of injunctive relief necessary to prevent future discrimination." *Id*.   The court found that International was a necessary entity that required joinder because the plaintiff's allegations of discrimination due to the maintenance of segregated Local unions was based on International's policies and procedures. *See id*.  Thus, International's joinder was based upon the union's conduct and policies, and complete relief could not be accorded without International's presence.

Defendants also rely on *Bremer v. St. Louis Sw. R. Co.*, 310 F. Supp. 1333, 1339-40 (E.D. Mo. 1969) for the contention that a union is a necessary entity that must be joined.  In *Bremer*, the plaintiff was suing her employer for Title VII sex discrimination, alleging that she was denied a promotion based on her sex despite being the applicant with the most seniority. *Id*. at 1334.  The plaintiff sought elimination of sex-based discrimination, "including damages and giving her the

position which she bid for and which [was] . . . held by another [male] individual." *Id*. at 1339. The court determined that joinder of the union was necessary.

> There is only one job in dispute. The individual now holding that job and the union representing him are not now parties to this suit. Any judgment in this suit is not binding upon those not parties to this suit. If plaintiff were to prevail, the individual in the disputed position may well decide to initiate and pursue proceedings for reinstatement under the collective bargaining agreement and the Railway Labor Act, with the possibility of an inconsistent result. At best there would be fragmentation and duplication of proceedings. At worst there would be confusion, a multiplicity of proceedings involving the same facts, and two persons entitled to one position.

*Id*. at 1340. As such, complete relief was not possible without the union's joinder. *Id*. Plaintiff was thus granted leave to amend to join the union and the individual holding the disputed position. *Id*.

Another case requiring joinder of a union was *Reyes v. Missouri-Kansas-Texas R. Co.*, 53 F.R.D. 293 (D. Kan. 1971). The plaintiff sued his employer based on Title VII race discrimination alleging, in part, that the "defendant ha[d] violated Title VII by certain collective bargaining agreements between itself and the union of which plaintiff was a member." *Id*. at 297. The court found that joinder of the union was required, because the plaintiff's allegations implicated the lawfulness of the collective bargaining agreement. *Id*. The court held that joinder of the union was necessary because the plaintiff's allegations arose, in part, under the potential unlawfulness of the union's position under the collective bargaining agreement. *Id*. However, the court noted that if it is determined that the plaintiff's complaint was based only on the defendant employer's unlawful practices under an otherwise lawful agreement, then joinder of the union was not appropriate, and dismissal of the union may be appropriate at that time. *Id*.

As such, the cases that have held that a union is a necessary party requiring joinder have done so when complete relief could not be accorded between the parties and the union's policies resulted in the discriminatory conduct complained of by the plaintiffs (*Evans*, 503 F.2d at 179-81), the relief sought by the plaintiffs was so limited that the union and other union members would necessarily be impacted (*Bremer*, 310 F. Supp. at 1339-40), and the lawfulness of the provisions contained within the collective bargaining agreement were questioned (*Reyes*, 53 F.R.D. at 297).

**b.** **Union Joinder is Not Required When Plaintiffs' Claims Arise Under the Defendant Employer's Conduct, Complete Relief can be Accorded Between Existing Parties, or When the Collective Bargaining Agreement and the Union's Rights are Not Affected**

Plaintiffs cite several cases that have held that joinder of a union is not required.  In *Lewis*, 1990 WL 6116, at *2, the plaintiff sued his employer under Title VII for race discrimination, alleging that the defendant engaged in discriminatory practices in its administration and implementation of transfer procedures; applied more burdensome criteria to non-white employees seeking to obtain disability and vacation benefits; retaliated against the plaintiff; conducted "a campaign of intimidation"; and placed inaccurate materials into the plaintiff's personnel file.  *Id*. at *1.  The defendant sought dismissal of the case due to the plaintiff's failure to join his union, asserting that the plaintiff's allegations implicated various provisions of the collective bargaining agreement.  *Id*. at *1-*2.  The court denied the defendant's request for joinder, noting that although the defendant cited a number of provisions under the collective bargaining agreement "relating generally to seniority, work assignments, and overtime," the defendant "provide[d] absolutely no evidence of how plaintiff's claims relate to these provisions, much less how vindication of plaintiff's rights may necessitate their alteration."  *Id*. at *2.  The court found that even though the defendant argued that the terms of the collective bargaining agreement were at issue in the case, it would be "extremely difficult" to show such a connection since the plaintiff's allegations were based on the defendant's conduct – i.e., the defendant's implementation and administration of policies – and not on the terms of the collective bargaining agreement.  *See id.*  Thus, the court held the union was not a necessary entity requiring joinder.  *Id*.

In *Hutcheson v. Tennessee Valley Auth.*, 604 F. Supp. 543 (M.D. Tenn. 1985), female employees and their union brought a sex discrimination action against the employer under Title VII.  The defendants sought dismissal, in part, because the plaintiffs failed to join a panel of union representatives as parties, asserting that the panel had an obvious interest in the lawsuit because it had negotiated and signed the employment agreement and its wage rates were being challenged as discriminatory.  *Id*. at 544, 548.  Denying the defendants' request for joinder, the court stated that it was "not persuaded by the 'ripple-effect' argument presented by the defendants whereby they allege

that any alteration of one pay level schedule would necessarily mean that all other pay schedules would be affected. Such an argument seems more appropriate for subsequent contract renegotiation, and should not create a bar for relief to those allegedly suffering from the effects of sex discrimination." *Id*. at 549. The court also noted that the action would only impact one pay section of the employment agreement that was at issue in the lawsuit, and that the only union interested in that part of the agreement was already a party to the action. *Id*. at 548-49. The court held that it could afford the plaintiffs complete relief without joining the panel by ordering back pay and alteration of the section of the pay scale at issue. *Id*. at 549. The court thus found that because the suit was "narrowly defined" for the purpose of "eradicating sex discrimination," the panel was not necessary for joinder. *Id*. As such, complete relief could be accorded between the existing parties. The court, however, noted that if the plaintiffs subsequently sought to expand the suit to attack portions of the agreement that would have an impact of the rights of the panel or other non-party unions, joinder could be reconsidered at that time. *Id*.

In *Marshall v. E. Airlines, Inc*., 474 F. Supp. 364 (S.D. Fla. 1979) *aff'd sub nom. E.E.O.C. v. E. Airlines*, 645 F.2d 69 (5th Cir. 1981), the Secretary of Labor brought suit against an airline alleging that it had violated provisions of the Age Discrimination in Employment Act of 1967. The defendant moved for joinder of the union, contending any of the defendant's violations of the law were due to its compliance with the terms of the collective bargaining agreement setting a retirement age and that the union had an interest in the lawsuit "because of the effect reinstatement of senior flight attendants would have on the seniority system." *Id*. at 366-67. The court denied the defendant's request to join the union, finding that "the joinder of the union would not have any effect in regard to the seniority system" and that "there is no argument that the award of retroactive seniority to the victims of hiring discrimination in any way deprives other employees of indefeasibly vested rights conferred by the employment contract." *Id*. at 367 (citing *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 778 (1976)). The court found that there was no basis to join the union because the union and its other members would not be deprived of their rights, noting that the U.S. Supreme Court had held that "employee expectations arising from a seniority system agreement may

be modified by statutes furthering a strong public policy interest." *Id*. (citing *Franks*, 424 U.S. at 778.)

Plaintiffs also cite *Karan v. Nabisco, Inc.*, 78 F.R.D. 388 (W.D. Pa. 1978), a class action suit alleging Title VII sex discrimination. The defendant contended that 25 local unions representing employees at 11 different bakeries, each with a separate collective bargaining agreement, were required to be joined. *Id*. at 400. The court determined that the unions were not necessary parties because the plaintiffs' complaint did "not allege any liability on the part of the local unions for the discriminatory practices challenged." *Id*. at 401. The unions were not "necessary to the challenge of alleged discrimination in the exercise of management prerogatives which would have no impact on the collective bargaining agreement or the rights of the union[s]." *Id*. Further, the "male-female segregation [was] in no way alleged to be produced by the collective bargaining contracts, nor would the non-discriminatory hiring and placement in the future or any retroactive relief affect the contract terms." *Id.* The court found that although certain practices challenged by the plaintiffs implicitly involved the collective bargaining agreements, including challenges to job transfers, promotions, job bidding, layoffs, recall, salary, compensation, absenteeism, and lateness policies, the basis of the plaintiffs' allegations rested with the defendant's "unequal application of neutral contract provisions and [did] not implicate the unions as to liability. The relief, if any, would not compel revision of these contract terms; only their application to individuals as ordered by the Court." *Id*. at 402. While the court indicated that the unions' participation might be "helpful" and they might have an interest in "formulating a relief equitable to all their members and . . . aid[ing] in implementing any court order," the unions' participation was not necessary for effective relief and thus they were not required to be joined. *Id*.

In *Dunlop v. Beloit Coll.*, 411 F. Supp. 398 (W.D. Wis. 1976), the Secretary of Labor brought action against an employer under the Equal Pay Act, alleging that the employer paid female employees lower wages than male employees for equal work. The defendant employer moved for dismissal on the grounds that the plaintiff failed to join the workers' union in the suit, asserting that the wages, hours, and working conditions of the defendant's employees were established by the collective bargaining agreement. *Id*. at 399. The defendant submitted a letter from a union

representative indicating that the union would not negotiate a new collective bargaining agreement

that incorporated nondiscriminatory rates and argued that defendant "had no practical choice but to

accede to the Union's demands to keep the prior agreement in effect and thus, to maintain the wage

differentials." *Id.* at 400.  The court rejected that argument and held:

> A determination by this court that defendant had been discriminating in its wage rates against certain female employees would require the defendant to adjust the wage rates of those employees to the level of the male employees performing equal work. The defendant's obligation to pay the adjusted rate would supersede any obligation which it had under a collective bargaining agreement just as a raise in the national minimum wage rate would supersede provisions for lower wages which might exist in collective bargaining agreements. The minimum wage and equal pay provisions of the Fair Labor Standards Act cannot be waived by private agreements between employers and employees or between employers and labor unions.

*Id.* at 401.  As such, the court found that the union was not a necessary party that needed to be joined

in the lawsuit because the minimum wage and equal pay provisions were controlled by law and a

contract between the union and the employers could not waive those provisions.  *Id.* at 403.

In *Lane*, 2013 WL 1310676, at *3, the court found that joinder of the union was not necessary

because there was "no probability" that the rights of the union would be affected since the plaintiff's

claims alleged that the defendant "impermissibly considered her gender in deciding how she should

be compensated while she was employed and whether to terminate her employment." *Id.* at *3.

*Lane* also examined numerous union joinder cases, determining that "[a] union is a necessary party

when the claims go to the terms of the collective bargaining agreement" and should only be joined

"when adjudicating such claims might require a court to make changes to a plaintiff's wages that are

not provided for in the collective bargaining agreement." *Id.* (citing *Gray v. Oncor Elec. Delivery

Co.*, No. 3:11–CV–781–L, 2011 WL 6039629, at *2 (N.D.Tex. Nov.30, 2011)); *see also Lane's*

discussion of cases finding that joinder of a union was necessary (citing *E.E.O.C. v. Braswell Motor

Freight Lines, Inc.*, No. CA–3–7101–D, 1974 WL 259, at *1 (N.D.Tex. Aug.26, 1974); *Reyes* 53

F.R.D. at 297; *McCooe v. Town of Manchester*, 101 F.R.D. 339, 341 (D. Conn.1984);  *Freeman v.

Motor Convoy, No. 16185*, 1979 WL 248 (N.D.Ga. June 29, 1979); and cases finding when joinder

of a union was not necessary (citing *Gray,* 2011 WL 6039629, at *2; *E.E.O.C. v. Eastern Airlines,

Inc.*, 645 F.2d 69 (5th Cir.1981) (unpublished) and concluding that cases where the employer's

1   alleged conduct is the basis for the discrimination claim do not require joinder while cases where the

2   union's rights are affected require joinder ).

3         Additional courts have also determined that a union was not a necessary entity that was

4   required to be joined. *See, e.g.*, *Fanning*, 2008 WL 2148753, at *2 (finding that joinder of the union

5   was not necessary because the union had neither claimed an interest nor sought to join the suit and

6   meaningful relief could be achieved without joinder); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 622 F.

7   Supp. 1147, 1150 (D. Or. 1985) (determining on reconsideration that it was not necessary to join the

8   union because complete relief could be afforded to the plaintiff and any future class by ordering back

9   pay in the event a Title VII violation was found, but realigning the union as a "non-aligned party"

10   to ensure that any relief granted would be binding upon the union and that the employer would not

11   be subject to inconsistent obligations).

12         Courts have determined that a union's joinder is not required when the plaintiff's claims rest

13   almost entirely on the implementation and administration of defendant employer's policies and

14   conduct, rather than on the general language contained in the collective bargaining agreement (*Lewis*,

15   1990 WL 6116, at *2; *Karan*, 78 F.R.D. at 400-01; *Lane*, 2013 WL 1310676, at *3), when the claims

16   are narrowly defined and relief can be accorded between the already named parties (*Hutcheson*, 604

17   F. Supp. at 549), when the union and its other members would not be deprived of their rights or the

18   terms of the collective bargaining agreement were controlled by law (*Marshall*, 474 F. Supp. at 366-

19   67; *Dunlop*, 411 F. Supp. at 403).

20         **2.**    **Plaintiffs' Complaint Does Not Allege Discriminatory Provisions Under the**

21               **Collective Bargaining Agreement or Wrongdoing by MCSEA**

22         The framework set forth by the courts in determining when a union is a necessary entity that

23   must be joined requires the Court to focus on whether the plaintiff's allegations of discrimination

24   were based on either discriminatory provisions within the collective bargaining agreement, whether

25   the discrimination arose solely from the employer's conduct, or whether the union furthered or

26   perpetuated the employer's discriminatory acts. *See Lewis*, 1990 WL 6116, at *2.

27         As noted above, in the Ninth Circuit, Defendants, as the moving party, bear the burden of

28   persuasion to show that MCSEA is a necessary entity that requires joinder. *Watt*, 608 F. Supp. at

320.  Under Rule 19(a)(1)(A), a person must be joined if "in that person's absence, the court cannot accord complete relief among *existing* parties." (emphasis added).  Here, Plaintiffs' complaint alleges discrimination based upon Defendants' conduct.  (FAC, Doc. 22.)  Specifically, Plaintiffs have alleged that:

> Defendants have discriminated against Plaintiffs and other female correctional officers by treating them differently and by subjecting them to the discriminatory denials of tangible employment benefits described within.  Defendants have intentionally discriminated against Plaintiffs and other female correctional officers on the basis of their sex and have consistently denied them equal treatment with their male counterparts.  Such conduct on the part of Defendants is designed to harass and discriminate against Plaintiffs and their fellow correctional officers.

(Doc. 22, ¶ 20.)  Plaintiffs allege that Defendants have discriminated against Plaintiffs "with respect to the compensation, terms, conditions, and privileges of their employment"; deprived Plaintiffs of opportunities because they are female; limited the number of female correctional officers hired and employed "despite formal complaints, repeated objections, a prior lawsuit, and a settlement involving similar claims"; harassed, intimidate, and ridiculed Plaintiffs, and been unresponsive to Plaintiffs' concerns.  (Doc. 22, ¶¶ 21-23.)  Plaintiffs further allege that "Defendants' policies, practices and/or procedures in terms of hiring, staffing, scheduling, transferring, assigning, promoting, and compensating correctional officers . . . had a disproportionate and adverse impact on female employees. . ."  (Doc. 22, ¶ 24.)

Defendants contend that because Plaintiffs' complaint alleges discrimination based on various provisions covered by the collective bargaining agreements such as shift bidding, time-off, overtime, and pay preferences, MCSEA's joinder is necessary.  (Doc. 24, 6:10-17.)  Defendants state that these issues are affected by California Penal Code section 4021(a), which requires that a female custodial officer be present when there is a female inmate.  (Doc. 24, 6:17-19.)  Defendants further note that there is a history of disputes among Defendant County, MCSEA, and various employees, including a prior lawsuit brought by female correctional officers and other issues concerning allocation of overtime.  (Doc. 24, 6:10-10:6.)  Defendants contend that there are disputes among the union members regarding some of these issues, specifically overtime.  (*See* Doc. 32, 10-11 ("[T]here is a distinct dispute within the union, for example, regarding overtime: many of the males want it and many of the females do not."); *see also* Doc. 24, 9:1-15.)

16

Defendants, however, neither establish how Plaintiffs' allegations are based upon discriminatory language in the collective bargaining agreement or on MCSEA's conduct, nor clearly set forth how the collective bargaining agreement would be affected and why complete relief cannot be accorded between the existing parties.  Plaintiffs' complaint does not allege any wrongdoing by MCSEA, nor does the complaint allege that the terms of the collective bargaining agreement are discriminatory. (*See* FAC, Doc. 22); *see also Lewis*, 1990 WL 6116, at *2 (finding that the plaintiff's "claims rest[ed] almost entirely on the *implementation and administration* of defendant's policies, rather than on the general language contained in the [collective bargaining] Agreement's provisions themselves"); *Karan*, 78 F.R.D. at 401 (finding that the alleged discrimination was based on the "exercise of management prerogatives" that "would have no impact on the collective bargaining agreement . . .").

Although Plaintiffs allege that Defendants engaged in discriminatory acts related to "job duties and shifts, positions, assignments, training, pay premiums, promotion, advancement, time-off, seniority, and other tangible employment benefits and opportunities" against female correctional officers based on their gender, there are no allegations related to MCSEA.  (Doc. 22, ¶¶ 19-20.) Instead, Plaintiffs allege that "Defendants' policies, practices, and/or procedures in terms of hiring, staffing, scheduling, transferring, assigning, promoting, and compensating officers . . . had a disproportionate and adverse impact on female employees such as Plaintiffs with respect to the terms and conditions of employment."  (Doc. 22, ¶ 24.)  While these "policies, practices, and/or procedures" may concern the collective bargaining agreement between Defendants and MCSEA, Plaintiffs complaint alleges discrimination based on Defendants' conduct in administrating these procedures.  *See Lewis*, 1990 WL 6116, at *2;  *Karan*, 78 F.R.D. at 400-02.  Further, although the allegations relate to provisions that are covered by the collective bargaining agreement, there are no allegations that the agreement itself is discriminatory or that MCSEA engages in discriminatory conduct.  (*See* Doc. 22.)

The collective bargaining agreement and various employment policies submitted by Defendants appear to be gender neutral.  (*See* Doc. 25, Ristine Decl., Exhs. 1-5, 14-19, 21-24; Doc. 28, Bennett Decl., Exhs. 1-7.)  Defendants do not show that the collective bargaining agreement

17

contains provisions that are facially discriminatory against Plaintiffs.  *See Karan*, 78 F.R.D. at 401 (finding that "unequal application of neutral contract provisions" did not implicate the union as to liability).

Defendants fail to show that, based upon the relief sought in the complaint, complete relief cannot be fashioned between the existing parties in this case as required under Rule 19(a)(1)(A). Plaintiffs' complaint seeks special damages, including past and future lost wages, earning capacity, and other employment related benefits; general and consequential damages, including damages for Plaintiffs' mental suffering, anxiety, humiliation, and emotional distress; punitive damages; injunctive relief, including an injunction to prevent "Defendants from discriminating against, harassing, and/or retaliating against Plaintiffs and other female correctional officers employed at the Merced County Sheriff's Department on the basis of their sex or gender," and reasonable attorneys' fees and costs.  (Doc. 22, ¶ 68, p. 14.)

Plaintiffs' request for monetary relief does not require the joinder of MCSEA.  *See Lane*, 2013 WL 1310676, at * 2 (finding that a demand for monetary damages did not require the joining of the plaintiff's union when the plaintiff made no allegations that any provision of the collective bargaining agreement was unlawful or resulted in the alleged discriminatory employment actions); *Forsberg*, 622 F. Supp. at 1150 (finding that a union need not be joined when the plaintiffs are seeking back pay and other relief).

Nor does Plaintiff's request for injunctive relief necessitate MCSEA's joinder, as Plaintiffs are seeking to enjoin Defendants from engaging in alleged discrimination that arises from Defendants' conduct and not from discriminatory provisions of the collective bargaining agreement. *See Lewis*, 1990 WL 6116, at *3 (finding that joinder of a union was not necessary because the plaintiffs claimed discrimination based on the defendants' implementation and administration of policies and not the general language of the collective bargaining agreement and thus "the court could simply order the company to cease administering a provision of the Agreement in a discriminatory manner"); *see also Karan*, 78 F.R.D. at 402 (finding that unequal application of neutral contract provisions did not implicate the unions as to liability and that any relief "would not

1   compel revision of these contract terms; only their application to individuals as ordered by the

2   Court").

3          Here, since the Court can afford complete relief between the existing parties based on the

4   relief sought by Plaintiffs' in the complaint – i.e., monetary damage and injunctive relief seeking to

5   enjoin the alleged discriminatory conduct – MCSEA is not required to be joined under Rule

6   19(a)(1)(A).     Further, Rule 19(a)(1)(B) does not require MCSEA's joinder either.   Defendants assert

7   that MCSEA must be joined pursuant to the standards set forth in Rule 19(a)(1)(B) because, if the

8   union is not joined, "MCSEA and its members could no protect its interests" and Defendant "County

9   would be subjected to substantial risk of incurring inconsistent obligations."  (Doc. 32, 10:14-15.)

10  However, MCSEA "has not claimed an interest nor has it sought to join in this suit . . . " and

11  therefore "cannot be a required party under Rule 19(a)(1)(B)."  *Fanning*, 2008 WL 2148753, at *2.

12  MCSEA has not sought to be joined in this action, and has not submitted any filings to support

13  Defendants' contentions that the union must be joined.  The declarations submitted by Defendants

14  represent Defendants' interests in this action but lack the authority to make any claims on behalf of

15  MCSEA, as no declarant has indicated any authority to represent the union.  (See Doc. 25 (Decl. of

16  Erin Ristine, a Lieutenant employed by the Merced County Sheriff's Department and "in the

17  plaintiffs' direct chain of command and supervision"), Doc. 26 (Decl. of Annette Giacalone, the

18  Human Resource Office Superior for the Defendant County), Doc. 27 (Decl. of Richard M. Flores,

19  Defendants' counsel), and Doc. 28 (Decl. of Shelline K. Bennett, an attorney who served as

20  Defendant County's "lead negotiator" for four successive Memorandums of Understanding between

21  County and MCSEA).)  Defendants' only indication regarding MCSEA's claim of interest is the

22  assertion that "MCSEA is amenable to service and jurisdiction will not be destroyed."  (Doc. 24,

23  3:15-16.)  Defendants have not shown, however, that MCSEA itself has claimed an interest in the

24  litigation.

25         Additionally, as noted above, Plaintiffs do not allege the Defendants discriminatory conduct

26  is based on provisions of the collective bargaining agreement; it instead arises out of Defendants'

27  alleged unlawful application of gender neutral agreements.  "A union is a necessary party when the

28  claims go to the terms of the collective bargaining agreement."  *Lane*, 2013 WL 1310676, at * 3

1   (citation omitted).  Here, although Plaintiffs allegations arise under provisions of the collective

2   bargaining agreement, the discriminatory allegations are based on Defendants' alleged unequal

3   administration and implementation of those provisions, not the actual provisions itself.

4          Accordingly, for the reasons set forth above, MCSEA is not a necessary party requiring

5   joinder under Rule 19.  As MCSEA is not a necessary party, the Court is not required to determine

6   whether MCSEA's joinder is feasible.  *Peabody II*, 610 F. 3d at 1078.

7   **D.     Joinder is Not Appropriate Under Rules 20 or 21**

8          Defendants' motion asserts that MCSEA should be added as a Defendant pursuant to Rule

9   20, which allows for permissive joinders and provides that defendants may be joined in an action if

10  "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

11  to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B)

12  any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P.

13  20(a)(2).  In their opposition, Plaintiffs contend that Defendants' request to join MCSEA under Rule

14  20 fails as a matter of law because "Rule 20(a) is a rule by which plaintiffs decide who to join as

15  parties and is not a means for defendants to structure the lawsuit."  *Moore v. Cooper*, 127 F.R.D. 422

16  (D.D.C. 1989); *see also Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983) ("[J]oinder

17  of defendants under rule 20 is a right belonging to plaintiffs, and only when a right to relief is

18  asserted against each defendant.");  4 James Wm. Moore et al., Moore's Federal Practice,

19  § 20.02[1][b], [2][a][i] (3d ed. 2012) (Rule 20 "may be used by a defendant only if the defendant has

20  asserted a counterclaim or crossclaim in the action . . .  The defendant has no right to insist that the

21  plaintiff join all persons who could be joined under the permissive party joinder rule.")

22         Defendants concede that they cannot add MCSEA at this time under Rule 20, but "suggest"

23  that the Court add the union, *sua sponte*, under Rule 21, which provides that "the court may at any

24  time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  However, as discussed above, MCSEA

25  is not a necessary party to this action and the Court declines to add the union at this time.

26  //

27  //

28  //

1

### IV.   CONCLUSION AND ORDER

2        For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for

3  Joinder of Merced County Sheriff's Employee Association is DENIED.

4

5  IT IS SO ORDERED.

6  **Dated:   May 31, 2013** _____/s/ Sheila K. Oberto_____
                                        UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28